EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Víctor Torres Maldonado h/n/c Víctor Torres Products<br><br>Recurrido<br><br>vs.<br><br>Junta de Subastas del Municipio de Aguadilla: Municipio Autónomo de Aguadilla; Económico Distributors<br><br>Peticionaria la primera | Certiorari<br><br>2007 TSPR 7<br><br>169 DPR \_\_\_\_ |

Número del Caso: CC-2005-1163

Fecha: 17 de enero de 2007

Tribunal de Apelaciones:

　　　　　Región Judicial de Aguadilla

Juez Ponente:

　　　　　Hon. Joge L. Escribano Medina

Abogado de la Parte Peticionaria:

　　　　　Lcdo. Pablo B. Rivera Díaz

Abogado de la Parte Recurrida:

　　　　　Lcdo. Jayson N. Ramos Pérez

Materia: Impugnación de Subasta

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Víctor Torres Maldonado h/n/c
Víctor Torres Products

    Recurrido

    vs.                              CC-2005-1163       CERTIORARI

Junta de Subastas del Municipio
de Aguadilla; Municipio Autónomo
de Aguadilla; Económico
Distributors

    Peticionaria la
    primera

    OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 17 de enero de 2007

El 8 de julio de 2005, la Junta de Subastas del Municipio Autónomo de Aguadilla --en adelante, la "Junta"-- publicó el Aviso de Subasta Núm. 2006-0068 para el suministro de alimentos a los centros Head Start localizados en el dicho Municipio.

Conforme a lo señalado en dicho aviso, la subasta se celebró el 5 de agosto de 2005. A ésta comparecieron tres licitadores con sus respectivas ofertas, a saber:

    1) Víctor Torres Products   $628,692.11

    2) Económico Distributors   $771,183.00

    3) Héctor Fortis Santiago   $962,234.37

Previo a la celebración de la subasta, se llevó a cabo una reunión en la cual se les entregó a los licitadores participantes un documento titulado "Términos y Condiciones para el Servicio de Entrega de Alimentos en Subasta". En el mismo se estableció como requisito el cumplimiento por parte de los suplidores, con las normas del Código de Alimentos de la Administración de Drogas y Alimentos de los Estados Unidos, en adelante, Código de Alimentos.[1]

De igual forma, según se colige del acta de apertura de la subasta, se les informó a los licitadores que la adjudicación final no dependería únicamente del precio ofrecido ya que era un factor importante el resultado de la inspección a realizarse en los almacenes de cada uno de los licitadores; ello con el objetivo de cerciorarse que las facilidades de los almacenes cumpliesen con la reglamentación federal aplicable, debido a que la permanencia de los fondos federales asignados al programa Head Start dependía de dicho cumplimiento.

El 15 de agosto de 2005, los representantes del personal del Proyecto Head Start inspeccionaron las facilidades del almacén de Víctor Torres Products. Del

---

[1] La cláusula número 25 de dicho documento dispone: "Requerir adiestramiento a empleados, proveedores (Suplidor) y Empacadoras de Alimentos sobre las regulaciones del Código de Alimentos y la aplicación del Sistema HACCP o Inocuidad de Alimentos, en las operaciones de alimentos".

informe emitido a esos efectos, y de otros documentos

obrantes en el expediente, surgen las siguientes

violaciones al Código de Alimentos:

1) en área de almacén existe poca ventilación, en violación a la Norma 603-11[2];

2) las ventanas, al igual que las puertas, no tienen tela metálica para evitar cualquier insecto o roedor al área del almacén, en violación a la Norma 6-202.15 (A) y (B)[3];

3) alimentos enlatados mezclados en una tarima con detergente y aceite de auto, en violación a la Norma 2-102.11[4] y 7-201.11 (B)[5];

---

[2] 6-304.11- Ventilation: "If necessary to keep rooms free of excessive heat, steam, condensation, vapors, obnoxious odors, smoke, and fumes, mechanical ventilation of sufficient capacity shall be provided".

[3] 6-202.15 – Outer Openings, Protected: "(A) Except as specified in (B), (C), and (E) and under (D) of this section, outer openings of a food establishment shall be protected against the entry of insects and rodents by: (1) Filling or closing holes and other gaps along floors, walls, and ceilings; (2) Closed, tight-fitting windows; and (3) Solid, self-closing, tight-fitting doors. (B) Paragraph (A) of this section does not apply if a food establishment opens into a larger structure, such as a mall, airport, or office building, or into an attached structure, such as a porch, and the outer openings from the larger or attached structure are protected against the entry of insects or rodents".

[4] 2-102.11- Demonstration: (C) (13) "Identifying poisonous or toxic materials in the food establishment and the procedures necessary to ensure that they are safely stored, dispensed, used, and disposed of according to law".

[5] 7-201.11 Separation: "Poisonous or toxic materials shall be stored so they can not contaminate food, equipment, utensils, linens, and single-service and single-use articles by: (A) Separating the poisonous or toxic material by spacing or partitioning; and (B) Locating the poisonous or toxic materials in an area that is not above food, equipment, utensils, linens, and single-service or single-use articles. This paragraph does not apply to equipment and utensil cleaners and sanitizers that are stored in ware washing areas for availability and convenience if the materials are stored to prevent

(Continúa ...)

4) no existe un área de productos de limpieza aparte y separada de los alimentos, en violación a la Norma 7-301.11 (A) y (B)[6] y Norma 7-201.11;

5) piso agrietado, no tiene losa o piso liso, por lo cual no es de fácil limpieza, en violación a la Norma 6-201.11[7];

6) certificado de inocuidad de alimentos vencido, en violación a la Norma 2-101.11 (1);

7) a los baños les faltan llaves o manecillas, en violación a la Norma 2-301.15[8];

8) el refrigerador esta distante de área de almacén y nevera domestica no tiene termómetro, en violación a la Norma 2-103-11 (A)[9].

Por otro lado, el 16 de agosto de 2005 el personal inspeccionó las facilidades de Económico Distributors. De

_____

contamination of food, equipment, utensils, linens, and single-service and single-use articles".

[6] 7-301.11- Separation: "Poisonous or toxic materials shall be stored and displayed for retail sale so they can not contaminate food, equipment, utensils, linens, and single-service and single-use articles by: (A) Separating the poisonous or toxic materials by spacing or partitioning; and (B) Locating the poisonous or toxic materials in an area that is not above food, equipment, utensils, linens, and single-service or single-use articles".

[7] 6-201.11- Floors, Walls, and Ceilings: "Except as specified under § 6-201.14 and except for antislip floor coverings or applications that may be used for safety reasons, floors, floor coverings, walls, wall coverings, and ceilings shall be designed, constructed, and installed so they are smooth and easily cleanable."

[8] 2.301.15 – Where to Wash: Food employees shall clean their hands in a hand washing sink or approved automatic hand washing facility and may not clean their hands in a sink used for food preparation or ware washing, or in a service sink or a curbed cleaning facility used for the disposal of mop water and similar liquid waste".

[9] 2-103.11 – Person in charge:  The person in charge shall ensure that (A) Food establishment operations are not conducted in a private home or in a room used as living or sleeping quarters as specified under § 6-202.111.

las observaciones hechas en el informe, surge que las facilidades del almacén de Económico Distributors <u>cumplían</u> con las normas federales aplicables.[10]

Así las cosas, la <u>Junta emitió notificación adjudicándole la subasta a Económico Distributors</u>. Dicha notificación lee, en lo pertinente, como sigue:

> El licitador ***Económico Distributors*** propuso lo siguiente: cotizo [sic] alimentos con precios razonables.
> El licitador ***Víctor M. Torres Maldonado*** propuso lo siguiente: cotizo [sic] algunos alimentos con precios razonables.[11]
> El licitador ***Héctor Fortis Santiago*** propuso lo siguiente: cotizo [sic] algunos alimentos con precios razonables.
> La Junta de Subasta, luego de analizar y estudiar la propuesta, y evaluación municipal, determina:
>
> 1. La oferta de Económico Distributors cumple con las especificaciones del aviso de subasta.
>
> 2. Según recomendaciones de Head Start sobre el informe de visita a las diferentes compañías se encontró lo siguiente:

---

[10] Entre las observaciones hechas en el informe de inspección se encuentran las siguientes:1) alimentos sobre paleta y tarimas sobre el nivel del piso;2) piso cumple con las reglas del Food Code; 3)ventanas con tela metálica e iluminación; 4) puertas corredizas con tela metálica; 5) área de materiales de limpieza separados de materiales de alimentos; 6) congelador y refrigerador con buena temperatura; 7) el baño tiene dispensador de jabón y papel toalla; 8) certificados de salud al día; 9) certificado de HACCP está al día y son monitoreados por inspector; 10) licencia sanitaria vencida, pero se presentó evidencia de que se estaba gestionando al 9 de junio de 2005.

[11] De los documentos obrantes en el expediente, surge que Víctor Torres Products no cotizó 12 renglones de alimentos, entre éstos, jamón de pavo, arroz grano mediano, jugos enlatados y agua destilada.

a. ***Económico Distributors*** – cumple con los requisitos en el área de almacén y documentación requerida, por lo que se recomienda favorablemente.

b. ***Héctor Fortis*** – falta de documentos (no presentó evidencia del seguro del Estado, HACCP y certificado de elegibilidad) y no se pudo observar el área del almacén.

c. ***Víctor Torres*** – documentos (certificados de salud) no estaban vigentes y no se encontró evidencia de estar en proceso. Además se encontraron varias deficiencias en el área de almacén, tales como: poca ventilación, la nevera doméstica no tiene termómetro, entre otros. [Énfasis suplido]

Por lo tanto, y a base de lo dispuesto en la Ley y en el Reglamento, se adjudica la Subasta número 2006-68 Alimentos para los Centros Head Start, al licitador: Económico Distributors, ya que tratándose de compras, construcción o suministros de servicios, este resulto [sic] ser los postores más bajos, cumplió con todas las especificaciones, ha demostrado su historial previo que tiene habilidad para realizar y cumplir con el contrato y gozan de reputación e integridad comercial ante el municipio.

Insatisfecho, Víctor Torres Products acudió --mediante recurso de revisión judicial-- ante el Tribunal de Apelaciones. Adujo, en síntesis, que la adjudicación a favor de Económico Distributors no representaba los mejores intereses del Municipio y que la Junta no hizo constar por escrito los criterios o razones beneficiosas al interés publico que justificaron la referida adjudicación. El Tribunal de Apelaciones revocó la determinación de la Junta. Concluyó que la Junta, en la notificación de adjudicación emitida, no expresó una síntesis de las propuestas de todos los licitadores y que el señalamiento de defectos se hizo de manera generalizada

e ignorando la evidencia disponible. No encontró razón beneficiosa al interés público que justificara la adjudicación de la subasta a favor de Económico Distributors, cuya cotización excedió la de Víctor Torres Products por $143,091.00. Conforme a lo antes esbozado, ordenó que se adjudicara la subasta a favor de Víctor Torres Products.

Inconforme, la Junta acudió --mediante recurso de *certiorari*-- ante este Tribunal. Aduce que procede revocar la Sentencia emitida por el foro apelativo intermedio debido a que éste incidió:

> … al determinar que la Junta no cumplió con el requisito de expresar una síntesis de las propuestas de los licitadores perdidosos y que los defectos de los licitadores perdidosos se hicieron de modo generalizado e ignorando la evidencia disponible.

> … al extralimitarse en sus funciones y ordenar la adjudicación de la subasta a un licitador perdidoso estrictamente por razones económicas cuando no hay certeza de que su oferta fuera más económica por este no cotizar doce renglones de alimentos, por lo que la supuesta economía en los costos es una artificial.

> … al extralimitarse en sus funciones y ordenar la adjudicación de la subasta a un licitador perdidoso estrictamente por razones económicas cuando dicho licitador no cumple con la reglamentación federal para el manejo y suministro de alimentos al programa Head Start, lo que pone en riesgo la salud de los niños y la permanencia de los fondos federales que sostiene dicho programa.

Expedimos el recurso. Contando con la comparecencia de ambas partes y estando en condición de resolverlo, procedemos a así hacerlo.

II

A

En virtud del derecho a una efectiva revisión judicial, el debido proceso de ley exige que toda notificación de adjudicación de una subasta municipal sea "adecuada", aun cuando la Ley de Municipios Autónomos no precisa el contenido de dicha notificación. "… [P]ara poder hacer efectivo el derecho de revisión judicial que consagra el Artículo 15.002 de la Ley de Municipios Autónomos[12],… en la notificación de adjudicación de una subasta [municipal]…, es necesario que se advierta: el derecho a procurar revisión judicial; el término disponible para así hacerlo; y la fecha del archivo en autos de copia de la notificación de la adjudicación…". IM Winner, Inc. v. Junta de Subastas, 151 D.P.R. 30, 38 (2000).

---

[12]   21 L.P.R.A. § 4702: "El Tribunal de Circuito de Apelaciones revisará, con exclusividad, el acuerdo final o adjudicación de la Junta de Subastas, el cual se notificará por escrito y mediante copia por correo escrito regular y certificado a la(s) parte(s) afectada(s). La solicitud de revisión se instará dentro del término jurisdiccional de veinte (20) días contados desde el depósito en el correo de copia de la notificación del acuerdo final o adjudicación. La notificación deberá incluir el derecho de la(s) parte (s) afectada(s) de acudir ante el Tribunal de Circuito de Apelaciones para la revisión judicial; término para apelar la decisión; fecha de archivo en auto de copia de la notificación y a partir de qué fecha comenzará a transcurrir el término. La competencia territorial será del circuito regional correspondiente a la región judicial a la que pertenece el municipio."

Debido a la naturaleza circunstancial y pragmática del debido proceso de ley, los elementos antes esbozados no constituyen una enumeración taxativa de las exigencias requeridas. Es por ello que la notificación de adjudicación que emita la junta de subastas municipal debe, además, incluir los fundamentos que justifican la determinación, aunque sea de forma breve, sucinta o sumaria. "Al requerir que se incluyan los fundamentos en la notificación, nos aseguramos de que los tribunales puedan revisar dichos fundamentos para determinar si la decisión fue una arbitraria, caprichosa o irrazonable." Punta de Arenas Concrete, Inc. v. Junta de Subastas, 153 D.P.R. 733, 742 (2001).

De igual forma, al requerir que la notificación se encuentre fundamentada, se evita que una parte se vea imposibilitada de cuestionar la correspondiente subasta debido a que, si desconoce las razones para la determinación de la junta, no tendrá fundamentos para cuestionar su proceder. R.B.R. Construction v. Autoridad, 149 D.P.R. 836 (1999); Punta de Arenas Concrete, Inc. v. Junta de Subastas, ante; IM Winner, Inc. v. Junta de Subastas, ante.

Por consiguiente, la notificación de adjudicación de subasta debe, al menos, incluir: 1. los nombres de los licitadores que participaron en la subasta y una síntesis de sus propuestas; 2. los factores o criterios que se tomaron en cuenta para adjudicar la subasta; 3. los

defectos, si alguno, que tuvieran las propuestas de los licitadores perdidosos; y 4. la disponibilidad y el plazo para solicitar la reconsideración y revisión judicial. Punta de Arenas Concrete, Inc. v. Junta de Subastas, ante, pág. 743-744; L.P.C. & D., Inc. v. Autoridad de Carreteras, 149 D.P.R. 869 (1999).

En el caso hoy ante nuestra consideración, el Tribunal de Apelaciones determinó que la notificación de adjudicación emitida por la Junta no cumplió con los criterios de validez establecidos en nuestra jurisprudencia; entendió que la Junta no incluyó una síntesis de las propuestas de los licitadores y que el señalamiento de defectos se hizo de forma generalizada. Erró al así decidir.

De un examen de la notificación de adjudicación en cuestión, surge que ésta incluye toda la información requerida, según antes enumerada. Aun cuando la síntesis de las propuestas se hizo de forma concisa y el señalamiento de defectos se hizo de forma generalizada, entendemos que la información incluida es suficiente para cumplir con el estándar mínimo de adecuacidad establecido por nuestra jurisprudencia.

Ante el tipo subasta aquí bajo análisis --donde los licitadores ofrecieron un precio por cada renglón de alimentos-- es suficiente señalar, como síntesis de cada una de las propuestas, si el licitador cotizó o no para todos los renglones de alimentos. Requerir información

detallada sobre las ofertas de los licitadores en cada renglón de alimentos desvirtuaría la razón de ser del requisito en sí, pues dejaría de ser una síntesis para convertirse en un análisis detallado de cada propuesta. De igual forma, entendemos que el señalamiento de defectos, aunque generalizado, cumple con el objetivo de informar las deficiencias detectadas. De una simple lectura de la notificación de adjudicación, se puede claramente deducir que Víctor Torres Products no cotizó en todos los renglones de alimentos, que algunos certificados de salud no estaban al día y que la planta física del almacén tenía deficiencias.

En el pasado no hemos tenido reparos en calificar como defectuosa una notificación de subasta cuando las circunstancias así lo han ameritado. A modo de ejemplo, podemos mencionar IM Winner, Inc. v. Junta de Subastas, ante, y L.P.C. & D., Inc. v. Autoridad de Carreteras, ante, donde declaramos como defectuosas las notificaciones allí emitidas debido a que éstas únicamente informaban a favor de quién se adjudicó la subasta.[13] A diferencia de

---

[13] En IM Winner, Inc. v. Junta de Subastas, ante, la notificación emitida por la junta allí involucrada únicamente disponía, en lo pertinente, lo siguiente: [l]uego de analizar las licitaciones presentadas la Hon. Junta de Subastas determinó que la mejor oferta fue de Ravaro Construction Corporation". En L.P.C. & D., Inc. v. Autoridad de Carreteras, ante, la notificación allí bajo consideración sólamente disponía, en lo pertinente:"[l]a Junta de Subastas de la Autoridad de Carreteras y Transportación desea informarles que la subasta de
(Continúa ...)

los casos previamente reseñados, en el presente caso <u>no</u> nos encontramos ante una notificación carente de información y fundamentos respecto a los criterios tomados en consideración por la Junta, al momento de adjudicar la subasta. Aquí la Junta <u>claramente especificó</u> las razones por las cuales descartó la oferta de Víctor Torres Products y adjudicó la subasta a favor de Económico Distributors, a saber, que Económico Distributors fue el único licitador: 1. que cotizó para todos los renglones de alimentos; 2. que cumplió con los requisitos en el área del almacén; y 3. que presentó la documentación requerida.[14]

En fin, la notificación emitida por la Junta no afectó el derecho de las partes perjudicadas a efectivamente cuestionar la subasta ni la facultad de los tribunales de revisar la razonabilidad de la determinación emitida.[15] Los fundamentos provistos por la Junta, de forma

_____

referencia fue adjudicada a los Miramar el día 29 de mayo de 1998".

[14]    Surge del expediente que la Licencia Sanitaria de Económico Distributors estaba vencida pero que se presentó evidencia de que la renovación de la misma estaba en proceso.

[15] Tan es así que Víctor Torres Products hizo efectivo su derecho a solicitar revisión judicial aduciendo varios fundamentos respecto a las deficiencias, en efecto, señaladas por la Junta en la notificación emitida. Aunque en la notificación aparecen sólo dos deficiencias, las mismas son suficientes para informar el tipo de criterios tomados en consideración por la Junta. Además, ello en nada afectó a Víctor Torres Products debido a que, previo a la adjudicación de la subasta y a presentación del recurso de revisión judicial, Víctor Torres Maldonado tuvo

(Continúa ...)

sucinta, fueron suficientes para cuestionar y revisar la adjudicación a favor de Económico Distributors. En consecuencia, concluimos que la notificación de adjudicación es "adecuada", según lo establecido por nuestra jurisprudencia.

B

En aras de proteger la buena administración del gobierno, los estatutos que requieren la celebración de subastas tienen el propósito de promover la competencia en las proposiciones, de manera que el Estado consiga realizar la obra al precio más bajo posible. "… [A]l requerirse que la subasta y el contrato se adjudiquen al postor más bajo se evita que haya favoritismo, corrupción, extravagancia y descuido al otorgarse los contratos". Justiniano v. E.L.A., 100 D.P.R. 334, 338(1971).

No existe, sin embargo, una regla inflexible que exija que la subasta deba adjudicarse siempre al postor más bajo, pues pueden existir consideraciones de interés público que lleven a que la licitación más baja no resulte

---

la oportunidad de observar el informe de inspección original en el cual se incluyeron todas las deficiencias e, incluso, firmó el mismo. De igual forma, la enumeración de sólo dos deficiencias del almacén en la notificación tampoco afectó la facultad de los tribunales de revisar la determinación debido a que la notificación por sí cumple con su cometido de informar los criterios y fundamentos considerados por la junta y el resto de los documentos que forman parte del expediente en su totalidad brindan más información respecto a lo reseñado sumariamente en la notificación, especialmente, el informe de inspección.

ser la mas económica. Véase: Empresas Toledo v. Junta, res. el 31 de agosto de 2006, 2006 T.S.P.R. 138. "Establecer una regla inflexible de que el contrato deba adjudicarse al postor más bajo, prescindiendo de tales consideraciones, privaría al público del beneficio del criterio de los funcionarios públicos en aquellas cuestiones en que el estatuto requiere que ellos lo ejerciten". Great American Indemnity Co. v. Gobierno de la Capital, 59 D.P.R. 911, 916 (1942).

Es por ello que hemos establecido que las agencias gozan de discreción al evaluar las propuestas sometidas, pues "cuando se trata de la adquisición de servicios técnicos de gran costo y sofisticación, la selección de un proveedor sobre otros puede conllevar decisiones que descansen, no en criterios estrictamente matemáticos, sino en una valoración de la tecnología, y los recursos humanos con que cuenta ésta, a la luz de las necesidades presente y futuras de la agencia". A.E.E. v. Maxon Engineering Services, res. el 9 de diciembre de 2004, 2004 T.S.P.R. 197. Sólo si el licitador más bajo cumple con los requisitos reglamentarios de la agencia y tiene la capacidad de realizar la obra de forma eficiente, deberá éste ser considerado para realizar la obra. Empresas Toledo v. Junta, ante.

Una vez la agencia o junta involucrada emite una determinación, los tribunales no deberán intervenir con ésta salvo que se demuestre que la misma se tomó de forma

arbitraria, caprichosa o mediando fraude o mala fe, pues la agencia, con su vasta experiencia y especialización, se encuentra, de ordinario, en mejor posición que el foro judicial para determinar el mejor licitador, tomando en consideración los factores esgrimidos tanto por la ley como por su reglamento de subastas. Empresas Toledo v. Junta, ante; A.E.E. v. Maxon Engineering Services, ante.

"En ausencia de fraude, mala fe, o abuso de discreción, ningún postor tiene derecho a quejarse cuando otra proposición es elegida como la más ventajosa. La cuestión debe decidirse a la luz del interés público y ningún postor tiene un derecho adquirido en ninguna subasta". Great American Indemnity Co. v. Gobierno de la Capital, ante, pág. 916.


II

Con el trasfondo doctrinal antes expuesto, pasamos a discutir si, en el presente caso, la Junta abusó de su discreción al no adjudicarle la subasta a Víctor Torres Products. Al respecto, el tribunal apelativo intermedio resolvió que no existía razón beneficiosa al interés público que justificara la adjudicación de la subasta a favor de Económico Distributors. Luego de un análisis minucioso de la totalidad del expediente, entendemos que el Tribunal de Apelaciones erró al respecto.

En primer lugar, la Junta no estaba obligada a adjudicarle la subasta al licitador más bajo. Tanto la Ley

de Municipios Autónomos, como los reglamentos aplicables, <u>facultan a la junta municipal a descartar el licitador más bajo cuando las circunstancias así lo ameriten.</u>[16] Específicamente, el Artículo 11.006, 21 L.P.R.A. § 4506, de la Ley de Municipios Autónomos establece que:

> [l]a Junta podrá adjudicar a un postor que no sea necesariamente el más bajo… si con ello se beneficia el interés público. En este caso, la Junta deberá hacer constar por escrito las razones aludidas como beneficiosas al interés público que justifican la adjudicación.

A su vez, el Artículo VI del Reglamento de la Junta de Subastas del Municipio de Aguadilla dispone que:

> "[l]a Junta adjudicará a favor del postor razonable más bajo en el caso de compras, construcciones, suministros y/o servicios… tomando en consideración que las propuestas sean conformes a especificaciones; términos de entrega; la habilidad del postor para realizar y cumplir con el contrato, la responsabilidad económica del licitador; reputación e integridad comercial y otras condiciones insertadas en el pliego de subastas. <u>Disponiéndose, que la Junta podrá adjudicar a un postor que no sea necesariamente el más bajo… si con ello se beneficia el interés público que justifican tal adjudicación</u>. (Énfasis nuestro).

---

[16] Además del Reglamento de la Junta de Subastas del Municipio de Aguadilla, el Reglamento 5262 de la Oficina del Comisionado de Asuntos Municipales sobre Normas básicas para los municipios , <u>permite que la subasta sea adjudicada al "postor responsable cuya oferta sea mas ventajosa"</u>. Será un "postor responsable" aquel que tenga los recursos financieros adecuados para cumplir su obligación, que sea capaz de cumplir con los términos requeridos, tenga un historial de cumplimiento satisfactorio y esté de otra forma cualificado y sea elegible para recibir una adjudicación de conformidad con las leyes y reglamentos aplicables, entre otras consideraciones.

En segundo término, del expediente surgen razones suficientes y razonables para justificar la adjudicación emitida en beneficio del interés público. Las deficiencias en las facilidades del almacén de Víctor Torres Products, las cuales se encuentran en contravención con las normas establecidas en el Código de Alimentos, justifican y revisten de validez la adjudicación a favor de Económico Distributors. Ordenar la adjudicación a favor de Víctor Torres Products, a pesar de las deficiencias en su almacén, pondría en riesgo la salud de los niños que forman parte del Programa Head Start y podría significar la pérdida de los fondos federales dirigidos a dicho programa, pues la permanencia de estos fondos depende del cumplimiento de los suplidores con la reglamentación federal aplicable, entre éstas, el Código de Alimentos.

Coincidimos con la Junta respecto a que las razones beneficiosas al interés público que justifican la adjudicación emitida son, ciertamente, garantizar la salud y bienestar de los niños participantes del programa a través de una calidad superior de los alimentos y asegurar la permanencia de los fondos federales dirigidos al programa mediante la selección de un suplidor que cumpla con la reglamentación federal sobre alimentos. Debido a ello, no albergamos duda de que la Junta, al descartar la oferta de Víctor Torres Products, actuó en protección del interés público.

Ahora bien, Víctor Torres Products aduce que la Junta venía obligada a detalladamente exponer por escrito las razones beneficiosas al interés público que justificaron la adjudicación. Entiende que la Junta incumplió con dicho cometido. A pesar de que en la notificación la Junta no hizo una expresión literal sobre las razones beneficiosas al interés publico, las mismas <u>claramente se infieren</u> de la notificación emitida y de los documentos anejados al expediente, entiéndase, el acta de reunión pre-subasta, el documento de términos y condiciones de entrega, el acta de subasta y los informes de inspección.

De un examen de dichos documentos, los cuales forman parte del expediente, podemos percatarnos del hecho de que, en todo momento, se hizo énfasis en el cumplimiento de los suplidores con las normas federales aplicables y el incumplimiento de Víctor Torres Products con las mismas. Ello es la esencia del interés público protegido mediante la adjudicación a favor de Económico Distributors. Además, la falta de una expresión literal sobre las razones beneficiosas al interés público <u>no</u> anula la adjudicación emitida y simplemente procede la enmienda de la notificación. <u>L.P.C. & D., Inc. v. Autoridad de Carreteras</u>, ante. En el presente caso, no se justifica ordenar la enmienda de la notificación debido a que ––como antes expresáramos–– las razones beneficiosas al interés público se infieren de la propia notificación y de los

documentos que forman parte del expediente en su totalidad.

Por otro lado, Víctor Torres Products aduce que desconocía los resultados del informe de inspección debido a que no se le entregó copia del mismo. No le asiste la razón. De una lectura del referido informe surge que Víctor Torres Maldonado, representante de Víctor Torres Products, firmó el mismo. El que no se le haya entregado una copia del informe no significa que no obtuvo conocimiento de las observaciones hechas en éste, pues, previo a su firma, muy bien pudo haber hecho lectura del informe. Además, siendo un suplidor con más de veinte años de experiencia, debió haber tenido conocimiento de las reglamentaciones federales aplicables al campo de los alimentos y que su almacén no cumplía con las normas allí esbozadas. Los términos y condiciones de la subasta exigían el cumplimiento con el Código de Alimentos y en todo momento se hizo énfasis sobre la importancia de la inspección a realizarse para cerciorar dicho cumplimiento. Por tanto, nada justifica su incumplimiento al respecto.

Por último, Víctor Torres Products señala que, en todo caso, la Junta debió permitirle subsanar los defectos señalados. [17] Entiende que los mismos son de fácil subsanación. Tampoco le asiste la razón. El objetivo

---

[17] También aduce que existen discrepancias en las deficiencias señaladas. Sin embargo, los documentos anejados al expediente son significativamente consistentes en términos de cuales deficiencias fueron detectadas.

detrás de las exigencias, términos y condiciones de una subasta es que los licitadores obtengan conocimiento de las mismas y, al momento de celebrarse la subasta, cumplan con lo allí requerido.

Exigirle a la junta esperar a que un licitador subsane los defectos detectados, a pesar de que previo a la celebración de la subasta se enfatizó sobre los requisitos que debían cumplirse, sería ponerle más trabas al proceso de compras y adquisición de servicios e, incluso, establecer un requisito inexistente en la legislación y reglamentación aplicable. Además, y contrario a lo que aduce Víctor Torres Products, entendemos que las deficiencias señaladas no son de fácil subsanación. Específicamente, subsanar deficiencias como poca ventilación, falta de tela metálica en puertas y ventanas y pisos agrietados sin loza conlleva el transcurso de tiempo al cual no debemos sujetar a la Junta.

La Junta cumplió con su cometido al informar la importancia del cumplimiento con la reglamentación federal aplicable, por lo cual era responsabilidad de los licitadores participantes cumplir con dicho requisito previo a la celebración de la subasta. Víctor Torres Products incumplió con las normas del Código de Alimentos y dicho incumplimiento justificó el que la Junta no le haya adjudicado la subasta a pesar de ser el licitador que ofreció el precio más bajo.

En fin, del expediente <u>no</u> surge que la Junta haya tomado una determinación arbitraria, caprichosa o mediando fraude o mala fe, por lo cual resolvemos que ésta no abusó de su discreción al adjudicarle la subasta a Económico Distributors.

### III

Por los fundamentos antes expuestos, procede que se decrete la revocación de la sentencia emitida por el Tribunal de Apelaciones, confirmándose la determinación y adjudicación de la Junta de Subastas del Municipio de Aguadilla, Subasta Núm. 2006-0068.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Víctor Torres Maldonado h/n/c
Víctor Torres Products

    Recurrido

       vs.                CC-2005-1163      CERTIORARI

Junta de Subastas del Municipio
de Aguadilla; Municipio Autónomo
de Aguadilla; Económico
Distributors

    Peticionaria la
    primera


SENTENCIA

San Juan, Puerto Rico, a 17 de enero de 2007


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocatoria de la emitida en el presente caso por el Tribunal de Apelaciones y se confirma la determinación y adjudicación de la Junta de Subastas del Municipio de Aguadilla, Subasta Núm. 2006-0068.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton concurrió en el resultado sin opinión escrita.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo